(No. 31688.

Lyman Ellsworth Wilger, Appellant, *vs.* Jessie Jeannette Wilger, Appellee.

*Opinion filed March 22, 1951—Rehearing denied May 21, 1951.*

SHELDON & BROWN, and ALEXANDER L. HAGLUND, both of Sterling, for appellant.

JACOB CANTLIN, of Rock Falls, and EARL L. SCOTT, of Erie, for appellee.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Lyman Wilger brought this suit in the circuit court of Whiteside County, seeking specific performance of an alleged oral agreement whereby his father, Joseph, since deceased, had promised to convey or devise an eighty-acre farm to plaintiff. The suit was brought against Jessie Wilger, a sister of the plaintiff to whom the property was devised upon the father's death. The cause was referred to a master in chancery who found the issues for defendant. His report was approved by the court, and a decree was entered dismissing the complaint for want of equity. Plaintiff appeals directly to this court, a freehold being involved. He contends the evidence sufficiently proves the

existence of a binding agreement, fully performed on the part of the plaintiff.

The complaint alleges that the father purchased the farm for plaintiff and promised him that if he would go on the farm, live there, farm it and improve it, the father would give the farm to him by will or deed; that plaintiff accepted the offer and did move onto the farm, improved it and farmed it continuously since March 1, 1931; and that he still lives on the premises and operates the farm pursuant to the original offer made by the father.

A large number of witnesses testified to hearing Joseph, the father, state that he was buying the farm for his son Lyman; that Lyman was to repair and maintain the farm at his own expense; and that the farm would eventually belong to Lyman. John Oncken, plaintiff's brother-in-law, testified that when Joseph was considering the purchase he said to John and Lyman: "Will you boys stay by me if I buy it?" Lloyd Baer, from whom Joseph purchased the tract, testified that on March 1, 1931, the day on which the purchase was consummated, the latter said he was buying the farm for Lyman; and that "Mr. Wilger stated that Lyman was to move on the place and take care of it, fix it up at his own expense whatever he cared to, the place would eventually be his. He said he had an agreement with Lyman and Lyman said that was correct and agreed to it." Mrs. Baer testified that on the same day Joseph stated: "If Lyman does as I want him to and does everything I want him to, I will give him this farm either during my lifetime or by my will;" that Lyman said, "I am going to stick by Dad and do everything he wants me to do, and it is a deal that Dad and I made." Other witnesses testified to various conversations in which Joseph remarked that Lyman was to pay for improvements and repairs on the farm; and that the property would eventually be his.

Since 1931, this farm and other farm property owned by Joseph were operated as a unit by Lyman and his

brother-in-law, John Oncken. Yearly rent was paid to Joseph, and several substantial improvements were made by the partners upon the other land as well as the farm in question. The plaintiff, however, at his own expense remodeled the dwelling house on the farm in question and added some improvements therein. It is not disputed that plaintiff resided upon the premises until his father's death.

While the evidence disclosed by the record may tend to show the existence of an agreement of some kind, we cannot say it proves the terms and performance thereof by the plaintiff with sufficient clearness and certainty to warrant the decree prayed for. Before an oral contract to devise or convey real estate will be specifically enforced, it must appear to be certain, definite and unequivocal in its terms. (*Williams* v. *Corcoran,* 346 Ill. 105.) The only proof on this question consists of casual statements made by Joseph to the persons from whom he bought the property and to various neighbors, acquaintances, and contractors who had done work on the premises. Most of these statements are merely to the effect that repairs and improvements on the property were to be made at Lyman's expense, as the farm would eventually be his anyway. They do not constitute evidence of a contract, but at most are mere declarations of an intention to convey or devise the land to him. Such expressions, when made by a father concerning his son, are clearly insufficient to support a decree for specific performance. *Ranson* v. *Ranson,* 233 Ill. 369.

The strongest evidence produced by plaintiff is the testimony of Mr. and Mrs. Baer, as to statements made by the deceased at the time he purchased the farm. According to Mr. Baer's testimony the terms of the agreement were that Lyman was to reside on the farm, operate it, and make whatever improvements he saw fit at his own expense. Under the statement of the deceased, testified to by Mrs. Baer, the terms were that Lyman was to do "everything

I want him to." This evidence falls far short of establishing terms and conditions of the contract with sufficient definiteness to warrant a court of chancery in granting specific performance. It fails to specify how long plaintiff was to reside on the farm or for whose benefit he was to operate it, and does not show an obligation upon plaintiff's part to make any improvements. He was merely to "fix it up at his own expense whatever he cared to." The declaration, testified to by Mrs. Baer, that Lyman was to do everything his father desired, obviously fails to show terms of sufficient certainty to warrant the relief sought. The rule is well settled that to entitle a plaintiff to specific performance the contract must be clear, certain and unambiguous in its terms. (*Adkins* v. *Adkins,* 332 Ill. 422; *Stephens* v. *Collison,* 313 Ill. 365.) It is not enough to show that an agreement of some kind existed between the parties and that it has, in whole or in part, been performed by the plaintiff. We do not consider the evidence in this record to be of that clear and satisfactory character which would bring the case within the rule above indicated.

Moreover, it is undisputed that plaintiff, together with his brother-in-law, leased the farm in question from Joseph on a year-to-year basis. It is further shown by the evidence that the improvements, other than those made in the residence itself, were paid for by plaintiff and his brother-in-law jointly. The conclusion is amply warranted that possession was not taken under the purported agreement. The evidence also sustains the findings of the master that the expenditures for repairs and improvements referred to were not made under the alleged contract but as a result of the leasehold interest held in partnership with the brother-in-law; and that while the improvements on the house itself were made by plaintiff under the expectation that the farm would be conveyed or devised to him, they were not made pursuant to a promise or agreement to do so. Under such circumstances, even if the oral contract existed as

alleged, no such part performance is shown as to take it out of the operation of the Statute of Frauds. To avoid the statute the proof must be clear and definite that the possession was taken under the agreement relied upon and in part performance of it, and that the improvements were made under the contract itself and not otherwise. *Stephens v. Collison,* 313 Ill. 365; *Ranson v. Ranson,* 233 Ill. 369.

We conclude, therefore, that the circuit court was correct in dismissing the complaint, and its decree will be affirmed accordingly.

*Decree affirmed.*