(No. 34423.—

EDMUND J. BURKE, Appellee, *vs.* JAMES D. BURKE *et al.,* Appellants.

*Opinion filed Nov. 20, 1957—Rehearing denied Jan. 20, 1958.*

HOLLERICH & HURLEY, of La Salle, for appellants.

POOL & LANGER, of Ottawa, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:
Edmund J. Burke brought this suit in the circuit court of La Salle County against James D. Burke, William Burke, Rose Widman, and Lillian O'Donnell, his brothers and

sisters, and James D. Burke, as executor of the will of James N. Burke, the deceased father of the parties, for specific performance of an oral agreement to devise real estate. The defendants, James D. Burke and William Burke, individually, and James D. Burke, as executor, filed an answer and counterclaim. A decree was entered finding in favor of the plaintiff, dismissing the counterclaim for want of equity, and ordering specific performance of the alleged agreement, from which decree the answering defendants have appealed directly to this court. A freehold being involved, jurisdiction of this court is properly invoked.

The factual background of the litigation shows that James N. Burke, deceased, during his lifetime, owned a 120-acre farm in Waltham Township in La Salle County consisting of 80 acres in one tract and a separate 40 acres. He lived and worked on this farm, with his wife and five children, and earned his livelihood therefrom. As each of his five children reached maturity, they found employment elsewhere and emancipated themselves from parental control, with the exception of Edmund J. Burke, the plaintiff. Edmund, upon reaching his maturity, remained with his father and mother and assisted in working the farm. In October, 1945, the mother died. In December, 1945, the plaintiff married and he and his wife, Mary, continued to reside at the homeplace with James N. Burke under an arrangement whereby the father had his own private room but took his meals with Edmund and Mary and received other personal services, such as laundry, housecleaning and nursing when he was ill. After his marriage, plaintiff operated the farm under a lease or some other arrangement, the details of which are not disclosed, by which he paid crop rentals to his father until the latter's death.

On May 24, 1949, James N. Burke executed a will by the terms of which he devised all of his real estate, together with all household furniture, farming tools, implements and equipment to the plaintiff, subject to bequests of $2000

each to James Burke and William Burke, and bequeathing his residual estate to James Burke, William Burke, Lillian O'Donnell and Rose Widman.

On June 23, 1952, decedent executed a second will by which he devised the south "forty," having thereon the home, barn, and other buildings to Edmund; the north "forty" to James D. Burke; the separate "forty" to William Burke; charged each of the three sons with the payment of one third of the balance due on the mortgage; made bequests of personal property to James, William, Rose and Lillian; declared that his other furniture and household goods were the property of Edmund; and gave his residual estate to all of the five children equally. The later will was admitted to probate in the probate court of La Salle County.

The plaintiff, in his verified complaint, set forth the alleged contract in the following terms: "That on or about January 1, 1946, the decedent entered into a verbal agreement with the plaintiff, by the terms of which the decedent agreed to make a will giving said farm to the plaintiff, subject to the payment of the mortgage thereon and legacies of $2000 each to James D. Burke and William Burke, sons of the decedent and brothers of the plaintiff, in consideration that the plaintiff would continue to live upon said farm, cultivate and operate it, maintain the fertility thereof, keep the improvements in good repair and maintain and furnish a home for the decedent during the rest of his life."

The proof of the alleged oral agreement consists of casual statements made by James N. Burke to his daughters, his lawyer, a neighbor, an employee and an auto repairman. Most of the statements are to the effect that he had an agreement or understanding with his son, such as: "That Eddie was going to have the home," "Ed and he had come to an agreement over farming the farm," "He was turning everything over to Edmund," "An oral agreement he made with Ed for a home for the rest of his life," "He was

going to make a will," "Ed saved the farm and he was going to give Ed the farm for doing that," "I have had this understanding with Ed and Mary and want to have it in black and white," "He said he had made a contract with Ed and Mary, that if they would give him a home, a place to live, so he could come and go on his own free will, that the place would be theirs and he was going to draw a will to that effect," and "He said the way Eddie and Mary were taking care of him, that his place was going to be theirs, that he made out a will that his place was Eddie's and Mary's."

While the evidence disclosed by the record may tend to show the existence of an agreement of some kind, we cannot say it proves the terms and performance thereof by the plaintiff with sufficient clearness and certainty to warrant the decree of specific performance. The statements attributed to the decedent do not set forth the terms of the agreement as alleged by the plaintiff in his complaint fully and completely or with certainty; neither can such be determined by taking the aggregate of all statements made to the separate witnesses individually.

In order to prevent injustice, it has long been settled in this State that a court of equity, in a proper case, will enforce an oral contract to devise and bequeath property in consideration of services to be rendered and performed. (*Gladville* v. *McDole*, 247 Ill. 34; *Chambers* v. *Appel*, 392 Ill. 294; *Jatcko* v. *Hoppe*, 7 Ill.2d 479.) Certain limitations necessarily have been imposed which are summarized in *Wessel* v. *Eilenberger*, 2 Ill.2d 522. (See also *Yager* v. *Lyon*, 337 Ill. 271, and *Galapeaux* v. *Orviller*, 4 Ill.2d 442.) A primary requisite to granting relief in this type of case is that the contract must be proved by competent evidence and be clear, definite and unequivocal in terms. *Greenwood* v. *Commercial National Bank of Peoria*, 7 Ill.2d 436; *Wilger* v. *Wilger*, 409 Ill. 58; *Williams* v. *Corcoran*, 346 Ill. 105.

The proof, viewed in the most favorable light for the plaintiff, shows that the plaintiff lived upon the farm, cultivated and operated it, and furnished a home for the decedent. None of the witnesses testified to that portion of the agreement which provided for maintaining the fertility of the soil and keeping of the improvements in good repair. Thus it is noted that there is a variance between the contract as alleged and the evidence adduced. Plaintiff is bound by his pleadings, and since he failed to prove the terms of the contract or his complete performance thereunder in the clear, definite and unequivocal manner required by our long established rules, he cannot have relief. A party to a suit, either at law or in equity, cannot have relief under proofs without allegations, nor allegations without proof in support. *Central States Cooperatives, Inc.,* v. *Watson Bros. Transportation Co.* 404 Ill. 566; *Leitch* v. *Sanitary District,* 386 Ill. 433.

The counterclaim of the defendants was dismissed by the trial court for want of equity. The appellants do not question the propriety of this ruling by their appeal. Accordingly, the decree of the circuit court of La Salle County in so far as it grants the relief prayed in the complaint is reversed and the dismissal of the counterclaim is sustained and the cause is remanded with directions to enter a decree dismissing the complaint and the counterclaim.

*Reversed and remanded, with directions.*